LB   **FILED**

MAR 14 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 08-10861-A-7 |
| JAMES W. CORBETT and | ) | |
| DAISY A. CORBETT, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| CALIFORNIA CORRECTIONAL PEACE | ) | Adv. No. 14-01089-A |
| OFFICERS ASSOCIATION BENEFIT | ) | |
| TRUST FUND, | ) | MAS-3 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES W. CORBETT and | ) | |
| DAISY A. CORBETT, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Appearances:          D. Edward Hays, Marshack Hays LLP, Irvine,
                      California, for California Peace Officers
                      Association Benefit Trust Fund

                      Daisy A. Corbett, in propria persona, Corcoran,
                      California

Resolution of this summary judgment motion pivots on a single issue: whether the California Correctional Peace Officers Association acquired a lien that attached to Daisy Corbett's workers' compensation claim before her bankruptcy and established in rem rights (which survive discharge) against her ensuing post-petition award.  Finding that its lien did not attach to Corbett's workers' compensation claim before her bankruptcy, the motion will be denied.

## I.    FACTS

### A.    Corbett's Injury and Disability Benefits

Daisy Corbett ("Corbett") was employed by the California Department of Corrections as a correctional counselor.  In late 1996, Corbett was assaulted by an inmate and suffered injuries.  After convalescing, she returned to work.  That same year, Corbett filed a claim with the Workers' Compensation Appeals Board ("WCAB").

During her tenure, Corbett was a member of the California Correctional Peace Officers Association (the "CCPOA").  The CCPOA offers its members the protections of benefit program offered by a disability benefit trust fund.  Such a disability benefit trust provides injured members money for living expenses from the date an on-the-job injury occurs (and the employee incurs lost wages) until a workers' compensation award is made.  The trust is funded by premiums paid by the plan's participants, by earnings received from investment

of those premiums, and, in cases in which the injured member later receives a workers' compensation award, by monies recouped from that settlement or award.  Before her injury, Corbett had elected to participate in the disability benefit plan offered by the CCPOA's disability benefit trust fund.

By 2005, Corbett's injuries precluded her from continuing her work as a correctional counselor, and she made a claim for benefits from the trust and signed a "Reimbursement Agreement and Assignment of Proceeds."  It provided that the CCPOA Benefit Trust Fund would pay Corbett's claim if Corbett agreed to reimburse the trust from workers' compensation benefits, when and if she received those benefits:

> [S]uch payment is conditioned on the Trust's right of
> reimbursement up to the full extent of benefits paid by
> the [disability benefit fund] on the claims, in the event
> that [Corbett] recover[s] (i) damages or proceeds . . . by
> award, settlement, insurance, or otherwise, for medical
> and other expenses (regardless of how such award
> settlement or otherwise is structured or itemized); or
> (ii) any proceeds from occupational insurance purchased by
> [Corbett's] employer, or provided under state workers'
> compensation acts, employer liability laws, or other laws
> providing compensation for work-related injuries.

The Reimbursement Agreement also provided for the assignment of her workers' compensation proceeds to the trust:

> In consideration of payment of benefits by the [disability
> benefit fund] related to the claims, [Corbett] agree[s] .
> . . to repay and hereby assign to the [disability benefit
> fund] the proceeds of any and all recovery/ies made from
> any responsible party or insurer to [her] or to any person
> or entity on [her] behalf, to the extent of any benefits
> provided by the [disability benefit fund] (minus any share
> of reasonable attorney's fees, determined according to the
> [disability benefit fund] rules.

3

The Reimbursement Agreement further stated that if Corbett failed to comply with the agreement, "the [disability benefit fund] may offset the amount which should be reimbursed against any benefit that may otherwise be (or become), payable under the [the CCPOA benefit program] on [her] behalf."

Corbett received monies from the disability benefit fund, which have never been repaid from any workers' compensation or other insurance covering work-related injuries.

As of 2008, Corbett's workers' compensation claim remained unresolved.

**B.    Corbett's Bankruptcy Case**

In 2008, Corbett filed a chapter 7[1] bankruptcy.[2]    James Salven was appointed as the trustee. Corbett did not list her workers' compensation claim on Schedule B, nor did she exempt it on Schedule C.[3]    Corbett did not list her workers' compensation claim in the Statement of Financial Affairs.  She did list the CCPOA as a general unsecured creditor in the amount of $56,658.20 on Schedule F.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  All "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] The chapter 7 was a joint petition filed by Corbett and her spouse, James Corbett.  James Corbett's default has been entered in this adversary proceeding.  For simplicity, Daisy A. Corbett will be the only debtor referred to throughout this decision.

[3] *See* Voluntary Petition, filed Feb. 21, 2008, ECF # 1; Fed. R. Evid. 201.

1    The CCPOA received timely notice of Corbett's bankruptcy.[4]

2 After investigating the case and unaware of Corbett's pending

3 workers' compensation claim, Salven filed a no asset report.  Corbett

4 then received her discharge.

5    Salven did not file an adversary proceeding to avoid the CCPOA's

6 lien based on lack of perfection or otherwise.  11 U.S.C. § 545(2).

7    Later in 2008, Corbett's chapter 7 bankruptcy was closed.

8 **C.    WCAB Proceedings**

9    In 2009, the CCPOA filed a claim with the WCAB for $85,986.90.[5]

10 In 2011, Corbett and the California Department of Corrections

11 attempted to resolve Corbett's long-standing workers' compensation

12 claim.  Toward that end, they entered into a "Stipulation with

13 Request for Award."  As pertinent here, the stipulation provided that

14 Corbett was injured on the job, disabled temporarily during specified

15 dates in the years 1996-1999 and 2005-2009, and deemed 82%

16 permanently disabled.  The stipulation also entitled her to

17 reimbursement of medical or legal expenses and payment of specified

18 amounts for temporary and for permanent disability less offsets for

19 amounts paid by the defendant in those proceedings.  Apparently,

20 because Corbett believed that her debt to the CCPOA was discharged

21 before any lien attached, the stipulation provided, "State Fund to

22

23

---

24    [4] Notice of Ch. 7 Bankr. Case, Meeting of Creditors, &
Deadlines, filed Feb. 25, 2008, ECF # 7.  Fed. R. Evid. 201.
25 Moreover, the CCPOA does not deny that it had timely notice of
Corbett's bankruptcy.
26

27    [5] The only evidence of the existence, date, and amount of the
CCPOA's WCAB claim was supplied by Corbett herself.  Ver. Resp. to
Compl. to Determine Validity, Priority and Extent of Lien 4 (last
28 paragraph), filed Sept. 22, 2015, ECF # 60.

withhold amount of the CCPOA lien from benefits owed including
[permanent disability] pending resolution of lien by applicant and
the CCPOA.  Lien [equals] $85,986.90."

The stipulation was captured in the award rendered by the WCAB
in favor of Corbett and against defendant California Department of
Corrections.  The award reserved a determination of the lien issue,
stating, "$85,986.90 to be withheld by State Fund from [permanent
disability] and/or life pension amounts to resolve the CCPOA lien."

**D.    Corbett's Reopened Bankruptcy Case**

Shortly after the WCAB issued its award, the CCPOA successfully
moved to reopen Corbett's bankruptcy case to determine the validity
of its lien.  Salven was reappointed the chapter 7 trustee.

After the case was reopened, the court granted Salven's motion
to compel the State Compensation Insurance Fund (the "State Fund") to
turn over the $85,986.90 withheld pursuant to the WCAB Award.  Both
Corbett and the CCPOA supported the motion.  The court ordered the
State Fund to turn over the disputed funds to Salven and Salven to
place those funds in a blocked account pending resolution of the lien
dispute.  The State Fund complied, but Salven did not.

In 2011, the CCPOA filed a proof of claim with this court for
$85,986.90, which it contended was secured based on the Reimbursement
Agreement.

Without ever obtaining resolution of the lien, Salven issued his
Final Report, which proposed distribution of the disputed sum of
$85,986.90 by paying administrative expenses and the CCPOA's "secured

claim" in the amount of $76,202.18.   When Corbett failed to file an objection, Salven distributed estate funds accordingly.

After Salven's distribution, Corbett objected and filed amended Schedules B and C, both disclosing and claiming exempt the $85,986.90 withheld on account of the lien claimed by the CCPOA.   Salven objected to Corbett's amended claim of exemption and responded to her objection to his Final Report.   After a hearing, the court sustained Salven's objection to Corbett's amended exemption claim.   The court overruled Corbett's objection to the Final Report based on waiver. Corbett appealed, and the Bankruptcy Appellate Panel vacated the court's orders on these objections and remanded the case for further proceedings.   *See Corbett v. Salven (In re Corbett)*, 2014 WL 1647393 (B.A.P. 9th Cir. Apr. 24, 2014).

The CCPOA filed the present adversary proceeding against Corbett requesting a determination of the validity, priority, and extent of its lien, declaratory relief that its lien was not discharged, and declaratory relief that its lien was superior to any claim of exemption in Corbett's workers' compensation award.

**II.   PROCEDURE**

The CCPOA moves for summary judgment under Rule 56, arguing that it is entitled to a statutory lien, i.e., a lien under California Labor Code § 4903.1(a)(3)(A), or to an federal common law equitable lien, which trumps Corbett's claim of exemption in the award.

Corbett filed a verified "Response to Complaint to Determine Validity, Priority and Extent of Lien."   Her response requests that the court deny the CCPOA's motion for summary judgment, allow her to

seek redress for "extreme and willful violations of court orders and discharge order pursuant to [§] 524(a)" and give her "permission to file debtor's motion for contempt and sanctions against the trustee and defendants for conspiresy (sic) bankruptcy funds."[6]

## III. JURISDICTION

This court has jurisdiction. *See* 28 U.S.C. §§ 1334, 157(a); General Order No. 182 of the U.S. District Court for the Eastern District of California. This is a core proceeding in which this court may enter final orders and judgment. *See* 28 U.S.C. § 157(b)(2)(I), (K). Even in a proceeding that is non-core, a bankruptcy court may issue final orders and judgments with the express or implied consent of the parties. 11 U.S.C. § 157(c)(1), (2); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). Here, the parties so consented. Status Conf. Hr'g, Dec. 9, 2014.

## IV. DISCUSSION

### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 requires the court to grant summary judgment on a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a),

---

[6] The court deems Corbett's Response to Complaint to Determine Validity, Priority and Extent of Lien as an opposition to the CCPOA's motion for summary judgment. Except for her request to deny the summary judgment motion, all Corbett's requests for relief in her opposition will be denied without prejudice because they constitute (1) an improper joinder of unrelated claims, *see* Fed. R. Bankr. P. 9014(c) (omitting Fed. R. Bankr. P. 7018, *incorporating* Fed. R. Civ. P. 18(a)); LBR 9014-1(d)(1); and (2) an improper attempt to obtain relief without filing motion that is noticed for hearing, Fed. R. Bankr. P. 9013, LBR 9014-1(f).

*incorporated by* Fed. R. Bankr. P. 7056. "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**B.   The Effect of the Automatic Stay**

A voluntary chapter 7 bankruptcy case is commenced by filing a petition.  11 U.S.C. § 301(a).  The commencement of the case creates an estate.  *Id.* § 541(a).  With limited exceptions, that estate comprises all of the debtor's legal and equitable interests in property as of the petition date.  *Id.* § 541(a)(1).

The petition also operates as a stay under § 362(a), which protects both the debtor and the estate.  The stay precludes creditors from actions against the debtor to recover or enforce claims incurred prior to the commencement of the case.  *Id.* § 362(a)(1)-(2), (6).  It also bars creditors from actions to possess or control property of the estate.  *Id.* § 362(a)(3).  Creditors may not create a lien on estate property after the commencement of a case, § 362(a)(4), *In re New England Carpet Co, Inc.*, 26 B.R. 934, 939 (Bankr. D. Vt. 1983), and with narrow exceptions, a creditor may not perfect or continue the perfection of a security interest that attached before the commencement of the case, *see* §§ 362(a)(4), (b)(3) (allowing perfection of security interests that attached prior to the petition to the extent and within the time frames described in §§ 546(b) and 547(e)(2)).

9

In this case, Corbett's bankruptcy filing created an estate, and almost every asset owned by her on the date of the bankruptcy filing was property of the estate. *See* 11 U.S.C. § 541(a)(1); *Clark v. Rameker*, 134 S. Ct. 2242, 2244-45 (2014); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983). Causes of action or claims for relief that accrue before the petition are interests in property included in the estate. *Smith v. Arthur Anderson LLP*, 421 F.3d 989, 1002 (9th Cir. 2005). Additionally, pre-petition, personal-injury causes of action are property of the estate even if they would not otherwise be assignable under state law. *In re Cottrell*, 876 F.2d 540, 542-43 (6th Cir. 1989); *In re Wood*, 291 B.R. 219, 224-25 (B.A.P. 1st Cir. 2003) (workers compensation claims). The estate includes exempt assets, *In re Hernandez*, 483 B.R. 713, 724-25 (B.A.P. 9th Cir. 2012) and unscheduled assets, *In re Blixseth*, 684 F.3d 865, 871 (9th Cir. 2012).

It is the trustee's sole and exclusive prerogative to control property of the estate. 11 U.S.C. § 323. A chapter 7 debtor has no post-petition authority to settle or control the disposition of a claim that arose pre-petition. *Jones v. Harrell*, 858 F.2d 667 (11th Cir. 1988). Judicial proceedings prosecuted or settlements negotiated by a chapter 7 debtor that violate the stay are void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992); *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000)(judicial proceedings in violation of the stay are void).

Section 362 describes the duration of the stay. As to estate property, the stay remains until it is no longer property of the

estate.   11 U.S.C. § 362(c)(1).   Scheduled assets not administered at
the time of closing are abandoned to the debtor, but unscheduled
assets remain property of the estate.   11 U.S.C. § 554(d); *Menk v.*
*Lapaglia (In re Menk)*, 241 B.R. 896, 913 (9th Cir. 1999); *In re*
*Dunning Brothers Co.*, 410 B.R. 877 (Bankr. E.D. Cal. 2009).

Corbett's workers' compensation claim was unscheduled.   As a
result, Corbett's claim (and its proceeds) never left the estate and
remained subject to the protections of the stay, even after the
discharge issued.   11 U.S.C. § 362(a)(2)-(4).

Furthermore, at least three different acts with respect to her
claim violated the continuing stay under § 362(a)(3): (1) the CCPOA's
filing of a claim with the WCAB in 2009, presumably to create a lien
under California Labor Code § 4903.05; (2) the CCPOA and Corbett's
execution of the Stipulation with Request for Award; and (3) the
WCAB's issuance of an award based on that stipulation.

As a consequence, the WCAB Award is void as it was issued in
violation of the stay.   Further, it was ineffective to create or
perfect a lien in favor of the CCPOA or otherwise adjudicate its lien
claim.

## C.    The Effect of Corbett's Discharge

Aside from the invalidity of any lien on the WCAB award given
the stay violations, the court considers the effect of Corbett's
discharge on CCPOA's lien claim.   Most individual chapter 7 debtors
receive a discharge, which forgives their personal liability for
debts arising before bankruptcy.   *See* 11 U.S.C. §§ 524(a)(2), 727(b).
Section 524(a)(2) describes the effect of a discharge, providing that

11

it "operates as an injunction against . . . an act, to collect . . . any such debt as a personal liability of the debtor."

While § 524(a)(2) precludes recovery on the debtor's personal liabilities, a creditor holding a valid, un-avoided lien that attached before bankruptcy may collect the secured debt after discharge from the debtor's property subject to the lien.  *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *Dewsnup v. Timm*, 502 410, 418 (1992) (liens "ride through" bankruptcy); *Cortez v. American Wheel, Inc.*, 191 B.R. 174 (B.A.P. 9th Cir. 1995) (valid but unperfected deed of trust survived debtor's bankruptcy).  Stated differently, secured creditors may proceed with actions that are exclusively in rem notwithstanding the issuance of the discharge.  *In re Echevarria*, 212 B.R. 185, 187 (B.A.P. 1st Cir. 1997); *Matter of Paeplow*, 972 F.2d 730, 735 (7th Cir. 1992) ("[C]reditors are not prohibited from executing a judgment lien against a discharged debtor's property, as long as the judgment was obtained *before discharge*.").

Section 524(a)(2) precludes a creditor from creating a lien against a debtor's property that is based on a discharged debt.  *See Matter of Paeplow*, 972 F.2d 730, 734-35 (7th Cir. 1992); *see also Harris Mfrs. Nat'l Bank*, 457 F.2d 631, 635-36 (6th Cir. 1972) (holding that a joint creditor's post-discharge in rem and quasi in rem actions against entirety property are impermissible unless the joint creditor has first obtained a judicial lien against such property *before* the discharge issues).

12

1  Here, Corbett's debt to the CCPOA arose prior to the filing of
2  her bankruptcy case in which her debts were discharged.  Salven did
3  not exercise his avoidance powers as to whatever interest CCPOA had.
4  The central question, then, is whether the CCPOA's lien attached to
5  Corbett's workers' compensation claim before Corbett filed bankruptcy
6  such that it retains in rem enforcement rights post-discharge against
7  her workers' compensation award.[7]  To resolve this question requires
8  consideration of the time of creation, or attachment, for the kind of
9  lien CCPOA asserts. Ordinarily, the nature, extent, and validity of a
10 creditor's lien are matters determined by state, not federal, law. *In*
11 *re Bering Trader, Inc.*, 944 F.2d 500, 502 (9th Cir. 1991); *In re*
12 *Copper King Inn, Inc.*, 918 F.2d 1404, 1407(9th Cir. 1990) ("State law
13 controls the validity and effect of liens in the bankruptcy
14 context."); *Tri-State Livestock Credit Corp. v. Ellsworth (In re*
15 *Ellsworth)*, 722 F.2d 1448, 1450 (9th Cir. 1984).

---

23   [7] The CCPOA puts much weight on the WCAB Award and the findings
24 in the Stipulations with Request for Award.  But this court does not
   believe that the proceedings before the WCAB are helpful in resolving
25 whether the CCPOA holds in rem rights that survived Corbett's
   discharge.  The WCAB issued its award three years after Corbett's
26 bankruptcy petition.  And the date of Corbett's bankruptcy (or, at
   the latest, the date of her discharge assuming the CCPOA could avail
27 itself of the provisions of §§ 362(b)(3), 546(b), 547(e)(2)) is the
   time at which CCPOA's lien rights, if any, are determined.

28

1.   **Although state law does not permit alienation of workers' compensation claims before an award is made, it recognizes some types of liens to be determined by the WCAB when it issues an award.**

As a general rule, California Labor Code § 4900 precludes an injured worker from assigning or encumbering workers' compensation claims before payment.

> No claim for compensation, except as provided in Section 96, is assignable before payment, but this provision does not affect the survival thereof.[8]

Cal. Lab. Code § 4900.

Similarly, Labor Code § 4901 exempts workers compensation claims and awards from creditors.

> No claim for compensation nor compensation awarded, adjudged, or paid, is subject to be taken for the debts of the party entitled to such compensation except as hereinafter provided.

Cal. Lab. Code § 4901.

Sections 4900 and 4901 express long-standing policy ensuring that injured workers, and not others, receive the financial benefits awarded for their injuries:

> The act states that no assignment shall be made "before payment." Claims are not paid until they become awards, and it is clear that the only thing payable under the provisions of the act is awards. It is evident that the legislature intended that there should be no assignment of claimant's rights whatsoever and that the award should be paid by the one against whom it was made directly to the claimant and to no one else.

*Pac. Elec. Ry. Co. v. Commonwealth Bonding & Cas. Ins. Co.*, 55 Cal. App. 704, 708 (1921).

---

[8] Labor Code § 96 applies to assignments by the injured worker to the California Labor Commissioner and is not applicable here.

Subject to stated limitations, California recognizes liens against workers' compensation for: (1) applicant's counsel's reasonable attorney's fees; (2) reasonable medical and medical-legal expenses; (3) reasonable living expenses; (4) reasonable burial expenses for deceased employees; (5) reasonable living expenses for the families of injured employees who have deserted or neglected their families; (6) the amount of unemployment compensation disability benefits paid pursuant to the Unemployment Insurance Code; (7) unemployment compensation benefits and "extended duration" benefits paid that overlap with temporary disability benefits awarded; (8) the amount of indemnity granted to crime victims; (9) compensation paid by the Asbestos Workers Account; and (10) self-insured employee welfare benefit plans that have paid living expenses to the extent that there is overlap between those benefits and the temporary disability indemnity award.  Cal. Lab. Code §§ 4903, 4903.1; Eskenazi, *California Civil Practice Workers' Compensation* § 12:2 (2015).

Creditors may obtain a lien in one of two ways.  Creditors who believe they are entitled to a lien under Labor Code §§ 4903 and 4903.1 file with the WCAB a claim and serve it upon the injured workers, the employer, the insurer, and their respective attorneys. *See* Cal. Lab. Code § 4903.05(a).  The WCAB determines at the time of its award whether a claimant is actually entitled to a lien against the injured workers' claim and what the amount of that lien should be.  *See* Cal. Lab. Code § 4903.  In the alternative, the WCAB has equitable authority, in limited circumstances, to award a lien in

15

favor of the creditors described in §§ 4903 and 4903.1 who have not filed a claim "if it appears . . . that a lien should be allowed if it had been duly requested by the party entitled thereto . . . ." Cal. Lab. Code § 4905.[9]

> **2.   Liens under the Labor Code attach to a workers' compensation claim when the WCAB issues its award.**

California decisional law holds that an injured worker has only an "inchoate right to compensation," and those rights only vest when a workers' compensation award issues. *Jenkins v. Workmen's Comp. Appeals Bd.*, 31 Cal. App.3d 259, 264 (1973).  California law has further established that a statutory lien against workers' compensation benefits does not arise unless and until an award is made.  *See Indep. Indem. Co. v. Indus. Accident Comm'n*, 2 Cal. 2d 397, 401 (1935) ("[T]he lien of a doctor or hospital furnishing medical treatment to an injured employee 'is wholly incidental to the principal award, and without such award there can be no lien.'" (quoting *Pac. Emp'rs' Ins. Co. v. French*, 212 Cal. 139, 141 (1931) (internal quotation marks omitted)).

The seminal case is *Pacific Employers' Insurance Company v. French*, 212 Cal. 139, 140 (1931).  Without the benefit of an underlying workers' compensation claim filed, a physician and a

---

[9]  The full text of that statutory section reads: "Except with regard to liens as permitted by subdivision (b) of Section 4903, if it appears in any proceeding pending before the appeals board that a lien should be allowed if it had been duly requested by the party entitled thereto, the appeals board may, without any request for such lien having been made, order the payment of the claim to be made directly to the person entitled, in the same manner and with the same effect as though the lien had been regularly requested, and the award to such person shall constitute a lien against unpaid compensation due at the time of service of the award."  Cal. Lab. Code § 4905.

hospital sought to impose liability for medical and hospital treatment rendered to an injured employee on the employer's workers' compensation carrier.  The employer and the injured employee were not parties to the proceeding, which was before the Industrial Accident Commission.  The Industrial Accident Commission made an award directly against the insurance carrier for the medical and hospital treatments furnished.  The carrier appealed.  The Supreme Court annulled the award because the commission lacked jurisdiction.  In doing so, the court shed light on when workers' compensation liens attach.

> The provisions of the statute to which we have referred clearly indicate that the determination by the Commission of the amount of the reasonable value of medical services rendered, and the imposition of a lien therefor, presupposes the making of an award to the employee or to his dependents entitled to compensation. The lien is wholly incidental to the principal award, and without such award there can be no lien. The Commission is a tribunal of limited jurisdiction. It cannot exercise powers outside of those declared in the Compensation Act.

*French*, 212 Cal. at 141-42.

California courts have long understood that the liens authorized by Labor Code § 4903 and 4903.1 attach to injured workers claims only when the WCAB makes its award.  *State Comp. Ins. Fund v. Indus. Accident Comm'n,* 89 Cal. App. 2d 821 (1949).  In *Industrial Accident,* an injured employee filed a claim with the Industrial Accident Commission ("Commission"), which the injured employee prosecuted and settled without the benefit of counsel.  *See id.* at 822.  Later, with the assistance of counsel, the injured employee applied for an adjustment of compensation.  The Commission found that the employee

should receive an additional $225, which the carrier paid before the Commission entered its award.  The Commission then belatedly entered an award for "$225, payable forthwith, together with interest as provided by law, less the sum of $35.00 payable to [the injured employee's attorney] as attorney's fees."  *Id.*  The carrier petitioned to reopen the case to amend the findings to reflect that the award had already been paid, and it petitioned for rehearing. The Commission denied these requests.  The State Compensation Insurance Fund sought review of the Commission's action making it subject "to an award to pay *for the second time* $225, of which $35 was to be paid the employee's attorney."  *Id.* at 823.  The court of appeals found relief warranted as to the obligation to pay the $225 twice, and then noted, "The principal dilemma which is now presented is as to the payment of the $35 attorney's fee."  Relying on *French*, 212 Cal. at 139, the court of appeals reasoned:

> The commission has no jurisdiction to make an order for an attorney's fee by way of what might be called a "personal judgment" against an insurance carrier. It has no powers beyond those conferred by the Constitution and the Labor Code. Its only power under section 4905 is to order such payment out of "unpaid compensation due at the time of service of the award" and to impress such award with a lien therefor. "The lien is wholly incidental to the principal award."

*Indus. Accident*, 89 Cal. App. 2d at 824 (citations omitted).  Finding that the carrier had fully satisfied the award, leaving no fund which could be impressed with a lien, the court of appeals annulled the Commission's award.  Implicit in the result was that applicant's counsel did not have a lien for fees.

California law may contain an exception to this rule of timing for attachment of liens on workers' compensation awards. Creditors who may be entitled to a lien under California Labor Code §§ 4903 and 4903.1 may protect their interests by filing a notice of lien under § 4903.05(a), which might be the time at which attachment occurs so long as the WCAB later approves that lien.[10] *Johnson v. Indus. Accident Comm'n*, 2 Cal. 2d 304, 307 (1936). In *Johnson,* the filing and serving of a notice of claim with the Commission put an insurance carrier on notice of the claimant's rights, and payment of funds to insured employee was at the carrier's peril. *See id.; see also Cal.-W. States Life Ins. Co. v. Indus. Accident Comn'n*, 39 Cal. 2d 104, 107-08 (1952); *State Comp. Ins. Fund v. Indus. Accident Comm'n*, 89 Cal. App. 2d 821, 824 (1949) (construing then applicable Labor Code 4904).

### 3. CCPOA's discharged debt cannot be the basis for the creation of a lien.

Even if the WCAB award were not void for the reason that it violated the stay, the award was issued post-discharge. And because attachment of liens on workers' compensation awards occurs only when an award is made, the CCPOA's lien could not have attached to the

---

[10] Any such exception to this rule for when attachment of a lien on a workers' compensation award occurs is inapplicable to this case. If such an exception actually exists, and if the CCPOA had filed a lien-claim form with the WCAB prepetition, an argument might be made that perfection could have been accomplished post-petition under a theory relying on §§ 362(b)(3), 546(b), 547(e)(2)(A). If such argument were to succeed, the CCPOA's asserted lien may have been insulated from avoidance by the trustee under §§ 545(2) or 549(a)(1).

1  award before Corbett's discharge.  But it also could not have
2  attached post-discharge under bankruptcy law.

3  　　　Corbett received her bankruptcy discharge in 2008.  The CCPOA
4  filed its notice of lien claim in 2009.  As a result, at the time of
5  the discharge, the WCAB had not entered an award on Corbett's claim
6  and, therefore, the CCPOA held nothing more than an unsecured claim.
7  That claim was discharged before the WCAB issued its award and thus
8  before the CCPOA's lien could have attached.
9
   　　　As a result, Corbett's debt to the CCPOA was discharged before
10 the time of attachment under state law.  Its discharged debt
11 precludes attachment of CCPOA's lien.  *Matter of Paeplow*, 972 F.2d
12 730, 734-35 (7th Cir. 1992); *Harris Mfrs. Nat'l Bank*, 457 F.2d 631,
13 635-36 (6th Cir. 1972).  CCPOA's lien, therefore, could not attach to
14 the award when it was made because of its discharged debt.
15

16 　　**D.   Requirements for a Lien under Labor Code § 4903.1**

17 　　　Even if its debt were not discharged, the CCPOA has not yet
18 demonstrated that it falls within the protections of Labor Code
19 § 4903.1, under which it claims liens rights.[11]  That section gives a
20 lien to self-insured employee welfare benefit plans that have
21 provided living expenses between the date of injury and the date of
22

23 _____

24 　　　[11] Since Corbett's injury in 2005, § 4903.1 has been amended
   three times.  Act of Oct. 7, 2011, ch. 564, § 1, 2011 Cal. Legis.
   Serv. Ch. 564 (S.B. 457); Act of Sept. 19, 2012, ch. 363, § 66, 2012
25 Cal. Legis. Serv. Ch. 363 (S.B. 863); Act of Sept. 28, 2012, ch. 712,
   § 1.5, 2012 Cal. Legis. Serv. Ch. 712 (S.B. 1105). The 2011
26 amendments are not implicated by the facts of this case.  The 2012
   amendments applied to all pending matters when enacted.  Act of Sept.
27 19, 2012, ch. 363, § 84, 2012 Cal. Legis. Serv. Ch. 363 (S.B. 863).
   Accordingly, the court cites the language of Labor Code § 4903.1 as
28 it now reads.

the workers' compensation award to the injured worker.  Cal. Lab.
Code § 4903.1(a).

Section 4903.1(a) has seven elements.[12]  First, the self-insured
employee welfare benefit plan must create and perfect its lien in the
manner described in Labor Code § 4903.05.  Cal. Lab. Code § 4903.1(a)
(WCAB's determination of reimbursable benefits paid is based on only
liens *filed pursuant to § 4903.05*).  Second, the lien claimant must
demonstrate that it is an entity within the scope of § 4903.1(a),
i.e., a "self-insured employee welfare benefit plan" or other

---

[12] As applicable here, Labor Code § 4903.1(a)(3)(A) provides:

(a) The appeals board . . . before issuing an award or
approval of any compromise of claim, shall determine, on
the basis of liens filed with it pursuant to Section
4903.05, whether any benefits have been paid or services
provided by a . . . . self-insured employee welfare
benefit plan, and its award or approval shall provide for
reimbursement for benefits paid or services provided under
these plans as follows:

. . . .

(3)(A) If the appeals board issues an award finding that
an injury or illness arises out of and in the course of
employment and makes an award for temporary disability
indemnity, the appeals board shall allow a lien as
living expense under Section 4903, for benefits paid by
a group disability policy providing loss-of-time
benefits and for loss-of-time benefits paid by a self-
insured employee welfare benefit plan. The lien shall be
allowed to the extent that benefits have been paid for
the same day or days for which temporary disability
indemnity is awarded and shall not exceed the award for
temporary disability indemnity. A lien shall not be
allowed hereunder unless the group disability policy or
self-insured employee welfare benefit plan provides for
reduction, exclusion, or coordination of loss-of-time
benefits on account of workers' compensation benefits.

21

specified entity.  Cal. Lab. Code § 4903.1(a).[13]  Third, the appeals

board must make an award of temporary disability indemnity to the

applicant for an injury that arose out of and in the course of her

employment.  Cal. Lab. Code § 4903.1(a)(3)(A).  Fourth, the self-

insured employee welfare benefit plan must have paid benefits to the

injured employee.  *Id.*  Fifth, the lien is "allowed to the extent

that the benefits [paid by the trust] have been paid for the same day

or days for which temporary disability is awarded."  *Id.*  Sixth, the

amount of the lien "shall not exceed the award for temporary

disability indemnity.  *Id.*  Seventh, the self-insured employee

welfare benefit plan must provide for "reduction, exclusion, or

coordination of loss-of-time benefits on account of workers'

compensation benefits."[14]  *Id.*

---

[13] "Self-insured employee welfare benefit plan" is a defined
term.  Labor Code § 4903.1(a)(3)(B) defines such an entity as "any
plan, fund, or program that is established or maintained by an
employer or by an employee organization, or by both, to the extent
that the plan, fund, or program was established or is maintained for
the purpose of providing for its participants or their beneficiaries,
other than through the purchase of insurance, either of the
following: (i)  Medical, surgical, or hospital care or benefits[;]
(ii) Monetary or other benefits in the event of sickness, accident,
disability, death, or unemployment."  For the purposes of this
motion, the court assumes that the CCPOA meets that definition,
though this fact is not clear from the record.  The Declaration of
Dan Escamilla ¶ 2, filed June 18, 2015, ECF # 49, indicates that the
CCPOA is a "self-funded and self-insured welfare benefit plan"
established under Title 29 of the United States Code ("ERISA").  The
court is unclear whether (1) such a plan meets conditions of a self-
insured employee welfare benefit plan as defined by Cal. Labor Code
§ 4903.1(a)(3)(B); and (2) an ERISA qualified plan is of the species
of plan contemplated by Labor Code § 4903.1(a)(3)(B).

[14] One additional element is noted. A lien on a WCAB award
requires the party asserting the lien to have made a good faith
effort to contact the applicant and resolve liens that will remain

22

1    The CCPOA has not satisfied at least four essential elements for

2 obtaining a statutory lien under the Labor Code.  First, it has not

3 demonstrated that it created and perfected its lien as required by

4 Labor Code § 4903.05, as mandated by Labor Code § 4903.1(a).  As it

5 now reads,[15] Labor Code § 4903.05(a) provides:

> Every lien claimant shall file its lien with the appeals
> board in writing upon a form approved by the appeals
> board. The lien shall be accompanied by a full statement
> or itemized voucher supporting the lien and justifying the
> right to reimbursement and proof of service upon the
> injured worker or, if deceased, upon the worker's
> dependents, the employer, the insurer, and the respective
> attorneys or other agents of record.

11 At a minimum, § 4903.05(a) contains four requirements.  The lien

12 claimant must file its claim with the WCAB.  The lien claimant must

13 use a claim form approved by the board.  The claim form must be

14 accompanied by "a full statement or itemized voucher supporting the

15

16

17 _____

18 unpaid after the stipulated award. *Davis v. Cal. Substance Abuse Treatment Facility*, 2015 WL 521622 (Cal. W.C.A.B. Jan. 26, 2015)
19 (citing Cal. Code Regs. tit. 8, § 10888(a)). In this case, no evidence has been proffered as to the CCPOA's good faith effort to
20 resolve the lien.

21    [15] Section 4903.05 was added in 2012. Act of Sept. 19, 2012, ch. 363, § 63, 2012 Cal. Legis. Serv. (S.B. 863).  But since Corbett's
22 injury occurred in 2005, and her bankruptcy was filed in 2008, the court reviewed the statute as it existed during 2005 to 2008.
23 Section 4903.05(a) carries forward former § 4903.1(c) without any substantive change. The 2005 version of subsection (c) of § 4903.1
24 was inserted in 1979 and provided as follows: "Any lien claimant under Section 4903 or this section shall file its lien with the
25 appeals board in writing upon a form approved by the appeals board. The lien shall be accompanied by a full statement or itemized voucher
26 supporting the lien and justifying the right to reimbursement and proof of service upon the injured worker, or if deceased, upon the
27 worker's dependents, the employer, the insurer, and the respective attorneys or other agents of record."  Cal. Lab. Code § 4903.1(c)
28 (2005).

23

lien and justifying reimbursement." It must be served on the injured worker, the employer, the insurer, and the attorneys for the parties.

Because the CCPOA has not demonstrated compliance with Section 4903.05(a), it has not shown that it is entitled to judgment as a matter of law that it has a valid lien on the WCAB award.

Second, the CCPOA has not demonstrated the WCAB made a finding of temporary disability indemnity. While the WCAB did issue an order purporting to make an award, that order was void and need not be accorded full faith and credit. A void adjudication is the same as no adjudication.

Third, the CCPOA has not demonstrated the existence of an overlap between its payments to Corbett and the temporary-disability portion of the WCAB award. A lien against temporary disability indemnity is only "allowed to the extent that the benefits [paid by the trust] have been paid for the same day or days for which temporary disability is awarded." Cal. Lab. Code § 4903(a)(3)(A). But since the WCAB award is void, and not entitled to full faith and credit, *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000), any findings in the award as to such an overlap of payments would have been insufficient as a matter of law to support CCPOA's lien. Furthermore, even if the court were to use the WCAB's findings as to the dates for which temporary disability was awarded, a genuine dispute would exist as to a material fact: whether there was complete

identity between the dates the CCPOA paid Corbett benefits and the dates the WCAB awarded temporary disability to Corbett.[16]

Fourth, "the self-insured employee welfare benefit plan must provide for "reduction, exclusion, or coordination of loss-of-time benefits on account of workers' compensation benefits." Cal. Lab. Code § 4903.1(a)(3)(A). The CCPOA has offered no evidence on this issue.

The CCPOA has thus failed to sustain its burden to show the absence of a genuine dispute as to its satisfaction of several essential elements of a statutory lien under Labor Code 4903.1. And the undisputed facts presented do not support the elements necessary for the statutory lien the CCPOA claims, so the CCPOA cannot be entitled to judgment as a matter of law.

---

[16] The CCPOA's sole evidence on the issue is the sworn statement of Escamilla: "Plaintiff [the CCPOA] made reimbursable advances of $85,986.90 in living expenses to Defendant [Corbett] during the period of August 5, 2005[,] through May 4, 2007." Escamilla Decl. ¶ 10, filed June 18, 2015, ECF # 49 (emphasis added). The WCAB awarded temporary disability indemnity for the following days: (1) November 21, 1996, through April 21, 1997; (2) May 5, 1997; (3) May 12-13, 1997; (4) May 19, 1997, through November 17, 1997; (5) November 17, 1997, through November 19, 1997; (6) November 20, 1997; (7) November 21, 1997, through December 5, 1997; (8) December 8, 1997; (9) December 19, 1997; (10) January 9, 1998; (11) January 16, 1998; (12) January 23, 1998; (13) January 30, 1998; (14) June 25, 1998, through August 19, 1998; (15) July 14, 1998, through November 1, 1999; and (16) July 11, 2005, through August 5, 2009. See Award ¶ (A), Jan. 11, 2011 (incorporating Stipulations with Request for Award ¶¶ 2, 9, Jan. 11, 2011).

**E.   Assertion of an Equitable Lien**[17]

Whether the CCPOA holds a valid equitable lien against Corbett's workers' compensation award is a question that involves three distinct, analytical issues. The first is whether California law would recognize an equitable lien as having arisen *before* Corbett's 2008 bankruptcy. *See* Cal. Lab. Code §§ 4903, 4903.05. The second is whether California law would entitle the CCPOA to an equitable lien

---

[17] The CCPOA argues that its status as a self-funded employee welfare benefit plan under Title 29 of the United States Code entitles it to assert an equitable lien under federal common law, citing *In re Carpenter*, 245 B.R. 39, 46-50 (Bankr. E.D. Va. 2000), *aff'd*, 252 B.R. 905 (E.D. Va. 2000), *aff'd*, 36 F. App'x 80 (4th Cir. 2002) and *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012). Because the nature, extent, and validity of a creditor's lien are issues ordinarily determined by state law, the CCPOA's argument is premised on the flawed assumption that ERISA preempts state law on the issue.

In most instances, state workers' compensation laws are excepted from ERISA's preemptive effect. *See* 29 U.S.C. § 1003(b)(3). *But see* 29 U.S.C. § 1144(a) (superseding "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *Pac. Bell v. Workers' Comp. Appeals Bd.*, 186 Cal. App. 3d 1603 (1986). Moreover, CCPOA has not directed this court to any particular provision of California's workers' compensation scheme that offends ERISA. *Martori Bros. Distribs. v. James-Massengale*, 781 F.2d 1349, 1357-58 (9th Cir.)(describing the kinds of state laws that are preempted), *amended by* 791 F.2d 799 (9th Cir. 1986).

More importantly, the provisions operative in this case appear to complement, not conflict with, ERISA. *Compare Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981) (striking a portion of New Jersey's Workers' Compensation Act that prohibited reduction of ERISA plan benefits by the amount of the workers' compensation award), *with* Cal. Lab. Code § 4901.3(a)(3)(A) (conditioning lien by self-insured employee welfare benefit plan on "reduction, exclusion, or coordination of loss-of-time benefits on account of workers' compensation benefits"); *see also Richardson v. Lahood & Assoc.*, 571 So. 2d 1082 (1990) (upholding Alabama statute that prohibited reduction of workers' compensation plan benefits by the amount of ERISA payments received). As a result, ERISA does not preempt California workers' compensation law on this point.

on a WCAB award.  And the third is whether an inchoate equitable lien, not perfected during bankruptcy, would ride through bankruptcy and survive discharge.  *See Matter of Paeplow*, 972 F.2d 730, 737 (7th Cir. 1992) (implying that inchoate equitable liens are discharged); *Fernandez-Lopez v. Fernandez-Lopez (In re Fernandez-Lopez)*, 37 B.R. 664, 669 (B.A.P. 9th Cir. 1984) (same); *see also Browne v. San Luis Obispo Nat'l Bank (In re Browne)*, 462 F.2d 129, 133-34 (9th Cir. 1972) (finding that no equitable lien existed where documents failed to create a security interest and holding that no valid lien could exist on debtor's property where discharge released debtor's personal liability on promissory note); *Sims v. Jamison*, 67 F.2d 409, 410-11 (9th Cir. 1933) (deciding the issue on state law); *Kennedy v. Stratton (In re Stratton)*, 106 B.R. 188 (Bankr. E.D. Cal. 1988); *In re N. Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575, 1577-78 (9th Cir. 1985) (expressing reluctance to impose equitable power to create constructive trust given that such a remedy would favor one creditor group at the expense of others similarly situated).

The court addresses first the issue whether an equitable lien, assuming one could be established by the CCPOA, could have arisen *before* Corbett's bankruptcy case was filed.  Generally, a judicially imposed equitable lien is deemed created at the time of the occurrences that gave rise to the underlying substantive right to the lien.  *Del Conte Masonry Co. v. Lewis*, 16 Cal. App. 3d 678 (1971). But Labor Code § 4900 alters the times when liens against workers' compensation claims arise.  As a matter of public policy, § 4900 precludes a lien against workers' compensation claims from arising

27

prior to payment of such claims.  Cal. Lab. Code § 96; *Pac. Emp'rs Ins. Co. v. French*, 212 Cal. 139, 140 (1931); *State Comp. Ins. Fund v. Indus. Accident Comm'n*, 89 Cal. App. 2d 821 (1949).  An exception may exist for lien claimants under §§ 4903 and 4903.1 that have filed and served notices of liens under § 4903.05, even though an award has not issued.  *Johnson v. Indus. Accident Comm'n*, 2 Cal. 2d 304, 307 (1936); *Indus. Accident*, 89 Cal. App. 2d at 824.  In this case, Corbett's bankruptcy and discharge occurred in 2008 before the WCAB issued its award in 2011.  As a result, no equitable lien could have arisen before Corbett's bankruptcy filing, and the CCPOA's unsecured claim was discharged before any equitable lien it asserts could have attached to Corbett's WCAB award.

Next, the court considers whether California law would entitle the CCPOA to an equitable lien on a WCAB award.  It may be questioned whether an equitable lien would be permitted at all given the legislative scheme and detailed statutory conditions for liens on WCAB awards.  But Labor Code § 4905 provides for the WCAB's recognition of a lien that could reasonably be classified as an equitable lien.  This provision narrowly tailors the circumstances in which such a lien may arise.  Labor Code § 4905 provides:

> [I]f it appears in any proceeding pending before the appeals board that a lien should be allowed if it had been duly requested by the party entitled thereto, the appeals board may, without any request for such lien having been made, order the payment of the claim to be made directly to the person entitled, in the same manner and with the same effect as though the lien had been regularly requested, and the award to such person shall constitute a lien against unpaid compensation due at the time of service of the award.

Cal. Lab. Code § 4905.

While this provision allows the WCAB to act without a lien filed in accordance with the statutory scheme, it also restricts the WCAB's discretion by limiting such lien to situations "where a lien *should be allowed* if it had been duly requested by *the party entitled thereto*." *Id.* (emphases added). The phrases "should be allowed" and "the party entitled thereto" strongly support the inference that an equitable lien under Labor Code § 4905 is permitted only if a party has met the substantive statutory elements that would entitle a party to a lien. In the case of a self-insured employee welfare benefit plan, that means the claimant must satisfy the requirements of Labor Code § 4903.1(3)(A). For the reasons discussed,[18] the CCPOA has not met several of these requirements, so it is not a "party entitled" to the equitable lien permitted under Labor Code § 4905.

Given the outcome of the first two issues, court need not reach the third issue, i.e., whether an inchoate equitable lien, not perfected during bankruptcy, would survive discharge.

In short, the CCPOA's unsecured claim was discharged before any equitable lien could have attached to Corbett's WCAB award. California law, moreover, does not entitle the CCPOA to an equitable lien on the undisputed facts in the record. For these reasons, the CCPOA is not entitled to judgment as a matter of law.

---

[18] See Section IV(D).

1  **V.    CONCLUSION**

2        For the reasons stated herein, the CCPOA's motion for summary

3  judgment will be denied.   The court will issue a separate order.

4  Dated: March 14, 2016

5

6                                    _____
                                     Fredrick E. Clement
7                                    United States Bankruptcy Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **Instructions to Clerk of Court**

2 | **Service List**

3

4 | The Clerk of Court is instructed to send the Order/Judgment or other

5 | court generated document transmitted herewith to the parties below.

6 | The Clerk of Court will send the Order via the BNC or, if checked

7 | ____, via the U.S. mail.

8

9 | Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if

10 | appointed in the case), and ___X_____ Other Persons Specified Below:

11

12 | D. Edward Hays, Esq.
Martina A. Slocomb, Esq.
13 | MARSHACK HAYS, LLP
870 Roosevelt Avenue
14 | Irvine, California 92620

15 | Daisy A. Corbett
2330 Gable Ave.
16 | Corcoran, California 93212

17 | James W. Corbett
2330 Gable Ave.
18 | Corcoran, California 93212

19 | Office of the United States Trustee
2500 Tulare Street
20 | Suite 1401
Fresno, California 93721

21

22

23

24

25

26

27

28